UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUSANA ABIGAIL MELARA ALVARADO, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. CIV-25-799-R ) |
| DIRECTOR, US CITIZENSHIP AND IMMIGRATION SERVICES, | ) ) ) ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant's Motion to Dismiss [Doc. No. 9] Plaintiff Susana Abigail Melara Alvarado's Complaint [Doc. No. 1] for failure to state a claim and lack of subject-matter jurisdiction. Plaintiff did not file a response to the motion or request additional time in which to do so. Accordingly, the matter is now at issue.[1]

**BACKGROUND**

Plaintiff's allegations arise from her status as a U-visa applicant. U-visas provide temporary nonimmigrant status to noncitizens who are victims of certain qualifying crimes and have been, are being, or are likely to be helpful in prosecuting such crimes. 8 U.S.C.

---

[1] This Court's local rules permit it to deem unopposed motions confessed. LCvR 7.1(g). However, the Tenth Circuit has instructed that "even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003). Furthermore, "the district courts have an independent obligation to address their own subject-matter jurisdiction." *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). Accordingly, the Court considers the merits of Defendant's motion.

1

§ 1101(a)(15)(U). Those granted U-visa nonimmigrant status are entitled to employment authorization documents ("EADs"). 8 U.S.C. § 1184(p)(3)(B); *see also* 8 C.F.R. § 214.14(c)(7).

Despite a staggering number of U-visa applications, only 10,000 noncitizens may receive U-visas each year. 8 U.S.C. § 1184(p)(2). However, "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list." 8 C.F.R. § 214.14(d)(2). Applicants must be determined eligible for a U-visa before being placed on the waiting list. *See* U.S. Citizenship & Immigr. Servs., Policy Manual, Vol. 3, Part C, Ch. 6 – Waiting List, *available at* https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-6 [hereinafter Policy Manual]. Placement on the waiting list requires a full evaluation of eligibility requirements by USCIS Officers—otherwise known as a Waiting List Determination ("WLD"). *Id.* "USCIS will grant deferred action or parole to U-1 petitioners . . . while . . . [they are] on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners." 8 C.F.R. § 214.14(d)(2).

In 2021, due to the growing number of U-visa applicants, the Department of Homeland Security implemented another regime to grant employment authorization. U.S. Citizenship & Immigr. Servs., Policy Alert: Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners (June 14, 2021) [hereinafter Policy Alert]. This new regime, called the BFD Process, was adopted pursuant to 8 U.S.C. § 1184(p)(6), which provides that USCIS may "grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U)." The BFD Process is less scrutinizing

than a waiting list adjudication and was adopted to help alleviate the backlog of those awaiting WLDs or final U-visa adjudication. Policy Alert.

The relevant policy guidance indicates that "[d]uring the BFD process, USCIS first determines whether a pending petition is bona fide." *See* Policy Manual, Vol. 3, Part C, Ch. 5 – Bona Fide Determination Process, *available at* https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5. "Second, USCIS, in its discretion, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion." *Id.* If USCIS finds favorably toward an applicant at step two, it may exercise its discretion to grant the applicant a BFD EAD (employment authorization) and deferred action. *Id.* "USCIS generally does not conduct waiting list adjudications for aliens who USCIS grants BFD EADs and deferred action to; these petitioners' next adjudicative step is final [U-visa] adjudication when space is available under the statutory cap." *Id.* Those who do not receive BFD EADs are "evaluated for waiting list eligibility and still [have] the opportunity to obtain" employment authorization and deferred action "if deemed eligible for waiting list placement." *Id.*

Plaintiff is an El Salvador citizen who has lived in the United States for around nine years. Doc. No. 1, ¶ 8. In 2022, Plaintiff was the victim of domestic violence in Oklahoma. *Id.* ¶ 9. On December 13, 2024, she filed a Form I-918 Petition for U Nonimmigrant Status and a Form I-765 Application for Employment Authorization (requesting an EAD). *Id.* ¶¶ 10-11. As of the date of this order, Defendant has taken no action on either of Plaintiff's applications. *Id.* ¶ 15. Plaintiff alleges USCIS's delay has harmed her by leaving her

3

without a BFD, work authorization, or deferred action. *Id.* ¶¶ 16-17. She brings three claims against Defendant under the Administrative Procedure Act.

Count One alleges USCIS has unreasonably delayed Plaintiff's BFD in violation of 5 U.S.C. §§ 555(b), 706(1). *Id.* ¶¶ 18-78. Count Two claims USCIS has unlawfully withheld her WLD under 8 C.F.R. § 214.14(d)(2). *Id.* ¶¶ 79-87. Count Three asserts USCIS has unreasonably delayed Plaintiff's WLD under 8 C.F.R. § 214.14(d)(2). *Id.* ¶¶ 88-125. Defendant moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) and (6). Doc. No. 9.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To hear a given case, a federal court must possess subject-matter jurisdiction. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) takes one of two forms: (1) a facial attack or (2) a factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). A facial attack, as is brought here, "assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id.* (citation omitted). Thus, the Court accepts the allegations in the Complaint as true.

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

...

(citation omitted). Although a complaint "does not need detailed factual allegations" to state a plausible claim, it does require "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). All well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

## DISCUSSION

Plaintiff's first and third causes of action assert Defendant has unreasonably delayed issuing (1) a BFD and (2) a WLD. Defendant disagrees, first arguing the Court lacks subject matter jurisdiction to compel adjudication on BFD status.

The Administrative Procedure Act requires agencies such as USCIS to conclude matters presented to them with "due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b). Under the APA, reviewing courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

> To state a claim for unreasonable delay, a party must assert "that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted). The APA's judicial review provisions do *not* apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Generally, the ability of a court to review an executive determination is presumed unless there is "clear and convincing evidence" that Congress intended to preclude such review. *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (quotation omitted).

*Delgado v. Miller*, No. 1:24-cv-03252-STV, 2025 WL 2513689, at *3 (Sept. 2, 2025).

"Title 8, United States Code, Section 1252 ('Judicial review of orders of removal') is a jurisdiction-stripping statute." *Ayala v. Noem*, 781 F. Supp. 3d 1187, 1197 (D.N.M.

5

2025) (citing *Bouarfa v. Mayorkas*, 604 U.S. 6, 10 (2024)). It deprives courts of jurisdiction to review, "regardless of whether the judgment, decision, or action is made in removal proceedings . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The U-visa statute is within the subchapter referred to in § 1252(a)(2)(B)(ii). *Ayala*, 781 F. Supp. 3d at 1197 (citing 8 U.S.C. § 1184(p)). It states: "'The Secretary may grant employment authorization documents to any alien who has a pending, bona fide application [for a U-visa].'" *Id.* at 1199 (quoting 8 U.S.C. § 1184(p)(6)).

Defendant argues that because Plaintiff cannot establish a clear, non-discretionary duty for Defendant to issue a BFD on her U-visa application, § 1252(a)(2)(B)(ii) deprives the Court of jurisdiction to compel adjudication on her BFD status.

Two schools of thought exist regarding whether the Court has jurisdiction over claims of unreasonably delayed BFDs. The first, which holds courts lack jurisdiction over such claims, is demonstrated by the Fourth Circuit's "front to back" reading of § 1184(p)(6) in *Gonzalez v. Cuccinelli*, 985 F.3d 357 (4th Cir. 2021). In *Gonzalez*, the Fourth Circuit found that "nothing in § 1184(p)(6) requires the agency to do anything." *Id.* at 366. "[T]he term 'pending, bona fide application' does not transform the discretionary 'may' into a mandatory 'shall.'" *Id.* at 371. The discretion provided to the Secretary over whether to grant work authorizations "suggests the same discretion in implementing the provision." *Id.* at 367; *see also Patel v. Noem*, No. 24 C 12143, 2025 WL 1489204, at *2 (N.D. Ill. May 23, 2025) ("Because the decision to grant [work authorization] is at USCIS's

6

discretion, the decision to delay adjudicating [a work authorization] application likewise is discretionary and barred by § 1252(a)(2)(B)(ii).").

Furthermore,

> the term "bona fide," which is integral to a BFD, is nowhere defined in the statutory scheme. Couched as that term is in § 1184(p)(6), which otherwise accords USCIS discretion, interpretation of that term is itself subject to USCIS's discretion. *See, e.g.*, *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 256-58 (E.D.N.Y. 2021) ("There is simply insufficient definitional content in the phrase 'bona fide' to compel agency action in the context of a statute that is framed, on its face, as discretionary.").

*Patel v. Noem*, 788 F. Supp. 3d 950, 955 (N.D. Ill. 2025). Although *Gonzalez* was decided prior to USCIS's issuance of its 2021 Policy Manual, "[§ 1184(p)(6)'s] conferral of discretion overrides any more detailed explanation of the BFD process espoused in USCIS policy documents. In any event, even the policy manual explains that after USCIS has decided whether a petition is bona fide, it then determines 'in its discretion' whether the petitioner poses safety or security risks and otherwise merits a favorable exercise of discretion." *Id.* Put simply, the "use of the word 'may' [in § 1184(p)(6)] triggers § 1252(a)(2)(B)(ii)'s denial of jurisdiction." *Id.* at 954 (citing *Bouarfa*, 604 U.S. at 13-14).

In short, according to the Fourth Circuit, the "term 'pending, bona fide application' merely sets forth a prerequisite that the agency must satisfy if it chooses, in its discretion, to conduct an adjudication." *Gonzalez*, 985 F.3d at 371. That is, "USCIS may exercise its discretion to adjudicate a prewaitlist work-authorization application and then determine whether a U-visa application is pending and bona fide as a prerequisite to granting work

7

authorization." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 444 (6th Cir. 2022).

District courts across the country have followed the Fourth Circuit's line of reasoning to find § 1252(a)(2)(B)(ii) precludes them from exercising jurisdiction over claims of unreasonably delayed BFDs. *See, e.g.*, *Ramires v. Wolf*, No. 1:20-cv-203-KWR-SMV, 2020 WL 6146393 (D.N.M. Oct. 20, 2020); *Delgado*, 2025 WL 2513689 (D. Colo. 2025); *Munoz v. Dir., U.S. Citizenship & Immigr. Servs.*, 8:25CV144, 2026 WL 322513 (D. Neb. Feb. 6, 2026); *Hasan v. Wolf*, 550 F. Supp. 3d 1342 (N.D. Ga. 2021).

The Sixth Circuit, however, takes a different approach in *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430 (6th Cir. 2022). Employing a "back to front" reading of § 1184(p)(6), it has found the BFD Process only partly discretionary:

> As for Plaintiffs' assertion that USCIS has unreasonably delayed adjudicating their work-authorization applications, 8 U.S.C. § 1252(a)(2)(B)(ii) applies only when a statute accords discretion; the BFD process is found in a manual, not a statute. Even without the BFD process,[2] we could still review Plaintiffs' claims because § 1184(p)(6) is a semi-mandatory statute that does not unambiguously "specif[y]" for

---

[2] The Sixth Circuit noted the Fourth Circuit decided *Gonzalez* prior to the June 2021 issuance of USCIS's Policy Manual, which explicitly set out the two-step BFD Process. *Barrios Garcia*, 25 F.4th at 445 n.4. Courts deciding whether they have jurisdiction over claims for unreasonable delay of BFDs *after* the issuance of the Policy Manual have found the two-step process "suggests 8 U.S.C. § 1184(p)(6) is best interpreted by reading the statute back to front." *Reyes Olmos v. U.S. Citizenship & Immigr. Servs.*, 785 F. Supp. 3d 459, 470 (D. Neb. 2025) (quoting Policy Manual) ("'USCIS *first determines* whether a pending petition is bona fide. *Second*, USCIS, *in its discretion*, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion.'"). The establishment of the two-step process in the Policy Manual is, according to courts like the Sixth Circuit, even more proof that the "discretion granted by § 1184(p)(6) applies to the decision to grant an EAD—the determination as to whether an application is pending and bona fide is a necessary prerequisite to that discretion." *Id.* (discussing *Barrios Garcia*, 25 F.4th at 444).

> § 1252(a)(2)(B)(ii) purposes that DHS maintains discretion over issuing work authorizations. Under our and USCIS's identical constructions of § 1184(p)(6), USCIS must decide whether a U-visa application is bona fide *before* exercising its discretion to grant work authorization. Because § 1184(p)(6) supplies only partly discretionary power to DHS, the statute is ambiguous enough to sustain the APA's presumption of judicial review.

*Id.* at 445 (emphasis added). The Sixth Circuit concluded Defendant is first required "to decide if an application is 'pending' and 'bona fide' *before* [it] can wield its discretion to grant an applicant work authorization." *Id.* at 444. Thus, § 701(a)(1) and § 1252(a)(2)(B)(ii) do not bar courts from deciding "whether there has been an unreasonable delay in adjudicating pre-waitlist work authorization applications." *Patel*, 788 F. Supp. 3d at 955 (citing *Barrios Garcia*, 25 F.4th at 443).

District courts across the country have also followed the Sixth Circuit's reasoning. *See, e.g.*, *Ayala*, 781 F. Supp. 3d 1187 (D.N.M. 2025); *Patel*, 2025 WL 1489204 (N.D. Ill. 2025); *Reyes Olmos*, 785 F. Supp. 3d 459 (D. Neb. 2025).

But whether this Court has jurisdiction over Plaintiff's BFD claim or not, Plaintiff has failed to adequately allege *unreasonable delay* of either her BFD *or* her WLD.[3] Courts

---

[3] Courts have split on the issue of reviewability of the pace of WLD adjudications. However, both the Fourth and Sixth Circuits have found federal courts have jurisdiction over claims of unreasonably delayed WLDs. *See Barrios Garcia*, 25 F.4th at 450 (finding USCIS's regulations mandating placement of U-Visa-eligible petitioners on the waitlist means federal courts "may determine whether USCIS unlawfully withheld or unreasonably delayed . . . placement . . . on the . . . waitlist under § 706(1)"); *Gonzalez*, 985 F.3d at 374 n. 10 ("[U]nlike the pre-waiting-list work authorizations [BFDs], the agency has committed itself by regulation to place eligible applicants on the waiting list. 8 C.F.R. § 214.14(d)(2) ('[a]ll eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status *must* be placed on a waiting list' (emphasis added))."). *See also Delgado*, 2025 WL 2513689, at *6 (quoting *M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 597 (W.D. Tex. 2019)) (citation and quotation marks omitted) ("[A]lthough [§ 1184(p)(6)] 'does not specify the timeframe within which a decision on U Visa Petitions should be made, by necessary

typically use the factors from *Telecomms. Rsch. & Action. Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*") to assess claims of agency delay. *See Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999) (indicating *TRAC* may be helpful when considering discretionary time schedules). These factors include:

> 1) the time agencies take to make decisions must be governed by a rule of reason; 2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; 3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; 4) the effect of expediting delayed action on agency activities of a higher or competing priority; 5) the nature and extent of the interests prejudiced by delay; and 6) the court need not find any impropriety behind agency lassitude to hold that agency action is unreasonably delayed.

*Tista v. Jaddou*, 577 F. Supp. 3d 1219, 1229 (D.N.M. 2021) (citing *TRAC*, 750 F.2d at 80). Due to the lack of cases in which the Tenth Circuit applies the *TRAC* factors to claims of agency delay, this Court turns to the guidance of other courts in analyzing Plaintiff's allegations.

> The first two TRAC factors are typically considered together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). And the first is often considered the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

*Khan v. Blinken*, No. 23-3474 (TJK), 2024 WL 2880426, at *3 (D.D.C. June 7, 2024).

---

implication the adjudication must occur within a reasonable period of time, since a contrary position would permit the USCIS to delay indefinitely, a result Congress could not have intended.'"). In any event, whether the Court has jurisdiction over claims for unreasonably delayed WLDs, Plaintiff has failed to allege unreasonable delay.

Defendant contends it follows a first-in, first-out approach when processing U visa applications—that is, Defendant processes applications in the order in which they are received. This approach is generally considered an adequate rule of reason. *See Patel v. Noem*, No. 25 C 2859, 2025 WL 2164835, at *2 (N.D. Ill. July 25, 2025); *Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 100 (D.D.C. 2021); *Jain v. Renaud*, No. 21-cv-03115-VKD, 2021 WL 2458356, at *4 (N.D. Cal. June 16, 2021) (collecting cases) ("[A]ll of the district courts that have considered this . . . have concluded that the visa availability approach satisfies the rule of reason.").

Plaintiff disagrees, asserting USCIS is not following its proclaimed approach. She alleges USCIS follows *no* consistent process, claiming this is apparent based on (1) the manner in which USCIS makes BFD decisions on the same day for applications that it received years apart, (2) the consistent increase in actual average processing times, (3) the wild fluctuations in the volume of decisions USCIS makes each month, (4) the manner in which later-filed applications receive WLDs ahead of earlier filed applications, and more. But despite the detailed nature of Plaintiff's allegations,

> the relatively short length of time [her] application has been pending compared to the typical processing time for U-Visa applications (discussed more below in connection with the second *TRAC* factor) counsels against concluding USCIS failed to use its asserted rule of reason in this case.

*Patel*, 2025 WL 2164835, at *2.

Factor two asks whether Congress has provided a "timetable" or other "indication of the speed" with which it expects an agency to act pursuant to an enabling statute. It appears Congress has indicated a general preference for immigrant benefit applications to

11

be processed "'not later than 180 days after the initial filing of the application.'" *Hulli*, 549 F. Supp. 3d at 101 (quoting 8 U.S.C. § 1571(b)). Some courts have said this six-month preference is merely "aspirational." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 344 (D.C. Cir. 2023). And although this preference is not directed toward U-visa applications, BFDs, or WLDs specifically, factor two does cut slightly in Plaintiff's favor because her application has now been pending for nearly 14 months. "But the delay has not reached the level of disproportionality . . . [typically] held sufficient to grant relief." *Id.*; *see also Patel*, 788 F. Supp. 3d at 958 (quoting *Orozco v. Blinken*, No. 22 C 5134, 2023 WL 4595377, at *4 (N.D. Ill. July 18, 2023)) ("There are '[n]o bright lines,' but 'courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.'").

Courts typically apply the third and fifth factors together. *See id.*; *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 103-04 (D.D.C. 2020). The third factor asks "whether the delay affects only economic interests versus human health and welfare interests" and the fifth looks to "the nature and extent of the interests prejudiced by the delay." *Id.* at 103. Plaintiff alleges USCIS's delay has left her without work authorization, and thus without the ability to provide for herself and family and to further her rehabilitation after her victimization. Furthermore, she alleges the delay prevents her from seeking a social security number and a REAL ID or driver's license and from opening a

12

bank account or safely paying taxes. She also remains in jeopardy of being subject to removal from the United States.[4]

However, "this alone is insufficient to compel USCIS to expedite determinations. Every delay in work authorization necessarily affects a petitioner's ability to earn a livelihood, and Plaintiff[] fail[s] to differentiate the effect of delay upon [her] from the effect inflicted upon other petitioners waiting ahead of [her] for adjudication." *Nayi v. Noem*, 799 F. Supp. 3d 739, 749-50 (N.D. Ill. Sept. 9, 2025) (citing *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275-76 (7th Cir. 2017)); *see also Uranga*, 490 F. Supp. 3d at 105 ("[I]t is notable that plaintiff does not point to any unique considerations that warrant an expedited review of his U-visa petition. . . . Since ordering the agency to adjudicate plaintiff's U-visa waitlist eligibility now would merely move him up the line, and move everyone else back, . . . that would create more unfairness than it would remedy given the likely number of equally worthy applicants.").

Factor four, "'the importance of "competing priorities" in assessing the reasonableness of an administrative delay,'" weighs in favor of Defendant. *Id.* at 104 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). The Court finds the D.C. Circuit Court's reasoning particularly persuasive on this factor:

> *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991), we refused to grant relief, even though all the other factors considered in *TRAC* favored it, where "a judicial order putting [the petitioner] at the head of the queue [would]

---

[4] Defendant assumes but does not concede one or both of factors three and five weigh in Plaintiff's favor, but suggests the overall balance of factors indicates the delay is not unreasonable.

13

> simply move[ ] all others back one space and produce[ ] no net gain." There the petitioner was one of many firms waiting for the FDA to pass upon their applications to produce generic drugs. There was no evidence the agency had treated the petitioner differently from anyone else, or that "officials not working on Barr's matters . . . [were just] twiddling their thumbs." *Id.* The problem stemmed from a lack of resources; that, the court held, was "a problem for the political branches to work out." *Id.*

*Mashpee*, 336 F.3d at 1101-02. Indeed, if the Court ordered Defendant to adjudicate Plaintiff's application, it would prioritize her application at the expense of others and "would not cure the agency's 'incompetence, if it exists and even if it is severe.'" *Uranga*, 490 F. Supp. 3d at 105 (quoting *Barr Lab'ys*, 930 F.2d at 76). "If it is indeed the sense of Congress that visa applications should be reviewed within 180 days, it is incumbent upon the legislature to insist that the agency receives the means to do so." *Id.* at 106.

Finally, under factor six, "the court considers whether there is 'any impropriety lurking behind agency lassitude,' although it need not find any 'in order to hold that agency action is unreasonably delayed.'" *Da Costa*, 80 F.4th at 345-46 (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted). Plaintiff has alleged USCIS (1) possesses resources to adjudicate BFDs but has intentionally slowed their adjudication and (2) has improperly stopped making WLDs for three years. Defendant admits Plaintiff cannot prove her factual assertions at this stage, which seems to indicate more factual discovery would be necessary to determine this issue (as well as the factor one issue of whether USCIS is following its proclaimed rule of reason).

And indeed, many courts in this circuit and outside of it have declined to consider whether a delay is unreasonable at the Motion to Dismiss stage because it involves "a fact-intensive analysis." *Ramires*, 2020 WL 6146393, at *3. "'What constitutes an unreasonable

14

delay in the immigration context depends to a great extent on the facts of the particular case.'" *Id.* (quoting *Haus v. Nielsen*, No. 17 C 4972, 2018 WL 1035870, at *3 (N.D. Ill. Feb. 23, 2018)). *See also Patel v. Garland*, No. CIV-22-379-JAR, 2023 WL 4365895, at *2 (E.D. Okla. July 6, 2023) (finding it inappropriate to address defendants' arguments regarding unreasonable delay at the 12(b)(6) stage because no evidence to prove defendants' allegations was before the Court, plaintiff argued he possessed evidence contradictory to the defendants' assertions, and little discovery had been completed at that point); *Tista*, 577 F. Supp. 3d at 1229-31 (same); *Pulido v. Cuccinelli*, 497 F. Supp. 3d 79, 94-95 (D.S.C. 2020) (same).

But even considering Plaintiff's allegations of impropriety and USCIS's alleged failure to follow the first-in, first-out rule of reason,

> it is notable that plaintiff does not point to any unique considerations that warrant an expedited review of [her] U-visa petition; nor does [s]he contend that the agency has treated [her] unfairly, or differently than any of the other tens of thousands of applicants who have also waited far too long. *See In re Barr Lab'ys*, 930 F.2d at 75 (recognizing that [] the unfair treatment of a particular applicant could warrant judicial relief since it would "then advance the cause of equal treatment").

*Uranga*, 490 F. Supp. 3d at 105. *See also Patel v. Noem*, No. 25 C 2857, 2025 WL 2673191, at *4 (N.D. Ill. Sept. 17, 2025) (citing *Calderon-Ramirez*, 877 F.3d at 276) ("But the *TRAC* factors are not mandatory. In *Calderon-Ramirez*, the Seventh Circuit affirmed the dismissal of an APA unreasonable delay claim regarding a pending U visa application without reference to *TRAC*. . . . Instead, the Court considered the increased backlog of U visa petitions . . . and USCIS's recent effort to alleviate the backlog.").

Plaintiff has been waiting for a BFD or WLD for fourteen months—some U-visa applicants have been waiting significantly longer. She has not differentiated herself from the other applicants or alleged why the delay in processing her U-Visa is any more unreasonable than the thousands of others waiting for the same.

Plaintiff has failed to state a claim for unreasonable delay with respect to her BFD and WLD. Thus, whether this Court has jurisdiction over Plaintiff's unreasonable delay claims or not, her failure to state a claim necessitates DISMISSAL of her first and third causes of action.

Plaintiff's remaining claim asserts Defendant has unlawfully withheld her WLD. Defendant argues Plaintiff's claim is unripe because if USCIS authorizes her to work pursuant to 8 U.S.C. § 1184(p)(6) (granting her a BFD EAD), Plaintiff would no longer have to seek a WLD. Thus, according to Defendant, Plaintiff's second cause of action is contingent on being denied a favorable BFD. But

> Defendants artificially inflate the certainty surrounding the BFD process, describing the BFD as a "preliminary adjudicative step," . . . and the WLD process as a "second chance" thereafter . . . . The Court does not doubt that the process often works this way—but it is not at all clear that it *always* does. The Policy Manual itself hedges on this matter: "USCIS *generally* does not conduct waiting list adjudications for noncitizens who USCIS grants BFD EADs and deferred action to . . . ." Policy Manual (emphasis added). Clearly the chronology of the process is not as fixed as Defendants suggest. . . .
>
> "USCIS clearly wields sole and unadulterated discretion to set forth, abide by, and eliminate the BFD process." *Barrios Garcia*, 25 F.4th at 441. Even assuming USCIS is currently hewing exactly to the BFD process, as Defendants suggest, the policy guidance could be rescinded at any time. . . . *See id.* ("A future administration could rescind the BFD process just as easily as this administration established it; the program could be retracted before any of Plaintiffs' applications are adjudicated by USCIS."). For these

16

> reasons, Plaintiffs' WLD claim is not made unripe by the existence of the BFD process.

*Ayala*, 781 F. Supp. 3d at 1198-99. This Court agrees with the reasoning in *Ayala*: the BFD process does not make Plaintiff's claim for unlawful withholding of her WLD unripe.[5]

However, the question remains whether Plaintiff has adequately alleged that USCIS has unlawfully withheld her WLD. Section 706(1) of the APA states that courts "shall . . .

---

[5] In a footnote, Defendant argues Plaintiff's harms cannot be redressed by this Court because only the issuance of a final EAD or a grant of deferred action would remedy Plaintiff's alleged harms, and the Court does not have the authority to order either of these remedies. The Court agrees with the *Ayala* Court's reasoning on this point as well:

> [A]lthough the BFD alone will not enable Plaintiffs to access EADs and deferred action, it is a necessary prerequisite to their doing so through the BFD process pathway. Thus, Defendants' delay in adjudicating Plaintiffs' applications and making BFDs injures Plaintiffs in the form of a lost opportunity to obtain those benefits—even though the process may not result in a favorable determination for any particular plaintiff. *See Roe No. 2 v. Ogden*, 253 F.3d 1225, 1228-30 (10th Cir. 2001) (holding that individual had constitutional standing to challenge bar fitness standards and procedures even though he may fail the bar exam); [citation omitted]; *N.M. Cattle Growers' Ass'n v. U.S. Forest Serv.*, No. CIV 23-0150 JB/GBW, 2025 WL 327265, at *74 (D.N.M. Jan. 29, 2025) ("Humane Farming's lost opportunity to rescue the Gila Cows is a concrete injury, regardless whether they would have rescued the Gila Cows successfully."); *see also Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.*, 729 Fed. App'x 287, 292-93 (5th Cir. 2018) (noting "a well-established line of cases holding that loss of a non-illusory opportunity to pursue a benefit constitutes injury in fact").
>
> A favorable ruling from this Court would redress Plaintiffs' injury by restoring the opportunity to obtain the benefit of EADs and deferred action. *See Patel v. USCIS*, 732 F.3d 633, 638 (6th Cir. 2013) (recognizing that the lost opportunity to seek a benefit is a cognizable injury in the immigration context); [citation omitted]; *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) (same); *Shalom Pentecostal Church v. Acting Sec'y*, 783 F.3d 156, 162 (3d Cir. 2015) (same).

*Ayala*, 781 F. Supp. 3d at 1202.

17

compel agency action unlawfully withheld or unreasonably delayed." "[T]he only agency action that can be compelled under the APA is action legally *required*." *Norton*, 542 U.S. at 63. "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64.

> There appears to be a greater consensus among the courts that
>
> the Secretary's placement of eligible petitioners on the waiting list and attendant grant of deferred action or parole is plainly mandatory, not discretionary. The regulation is unequivocal: "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list and receive written notice of such placement." 8 C.F.R. § 214.14(d)(2) (emphasis added). And "USCIS *will* grant deferred action or parole" to a wait-listed petitioner. *Id.* (emphasis added). DHS has therefore "impelled itself" to place eligible petitioners on the waitlist. *Barrios Garcia*, 25 F.4th at 443; *Gonzalez v. Cuccinelli*, 985 F.3d at 374 n.10 ("[T]he agency has committed itself by regulation to place eligible applicants on the waiting list.").

*Ayala*, 781 F. Supp. 3d at 1198.

But even if placing an eligible petitioner on the waitlist (i.e., issuing her a WLD) is a discrete agency action USCIS is required to take, the question remains: When must USCIS do so and at what point does its failure to do so amount to "unlawful withholding"?

Unfortunately, some confusion exists over the difference between when agency action is "unlawfully withheld" and when it is "unreasonably delayed." *Forest Guardians*, 174 F.3d at 1189. The Tenth Circuit has adopted the position that the distinction "turns on whether Congress imposed a date-certain deadline on agency action." *Id.* at 1190 (citing *Sierra Club v. Thomas*, 828 F.2d 783, 794-95 & nn. 77-80 (D.C. Cir. 1987)), *superseded by statute on other grounds as stated in Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544 (D.C. Cir. 2015).

> In our opinion, when an agency is required to act—either by organic statute or by the APA—within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable. However, when Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion. The agency must act by the deadline. If it withholds such timely action, a reviewing court must compel the action unlawfully withheld. To hold otherwise would be an affront to our tradition of legislative supremacy and constitutionally separated powers.

*Forest Guardians*, 174 F.3d at 1190.[6] *See also Biodiversity Conservation Alliance v. Jiron*, 762 F.3d 1036, 1075 (10th Cir. 2014) (citing *id.* at 1190-91) ("If an agency has no 'concrete statutory deadline' for agency action and such action is 'governed only by general timing provisions,' such as a general statutory admonition that agencies complete a task 'within a reasonable time,' then 'a court must compel only action that is delayed unreasonably.'"); *Calderon-Ramirez*, 877 F.3d at 276 ("While both parties agree that USCIS has a duty to process Ramirez's application, the Act and corresponding regulation fail to enumerate a timeframe that USCIS is required to process U-visa petitions for the waiting list. Thus, we must determine whether Ramirez's wait has been unreasonable."); *South Carolina v. United*

---

[6] The Tenth Circuit opinion *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167 (10th Cir. 1997), decided two years prior to *Forest Guardians*, indicated the Secretary of the Interior had "unlawfully withheld" agency action by "affirmatively disavow[ing] his responsibility to review the plaintiff's application" for several mining patents. *Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 876 n.19 (10th Cir. 2023). In *Wyo-Ben*, the Tenth Circuit left it to the district courts to consider in the first instance whether tension existed between the *Mt. Emmons* and *Forest Guardians* decisions. *Id. Wyo-Ben* was remanded back to the district court, which reasserted that "[a]gency action is 'unlawfully withheld' when [] an agency 'fails to comply with a statutorily imposed deadline.'" *Wyo-Ben, Inc. v. Haaland*, 760 F. Supp. 3d 1314, 1320 (D. Wyo. 2024), (quoting *Forest Guardians*, 174 F.3d at 1190), *appeal docketed*, No. 25-8008 (10th Cir. Feb. 18, 2025). In any event, Plaintiff has not alleged that USCIS has expressly disavowed its responsibility for adjudicating her WLD, and thus *Mt. Emmons* is not applicable here.

19

*States*, 907 F.3d 742, 755 (4th Cir. 2018) ("DOE's failure to remove not less than a metric ton of defense plutonium from South Carolina by the statutory deadline thus constituted an unlawfully withheld agency action within the meaning of § 706(1)."); *Norton*, 542 U.S. at 65 ("[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act . . . .").

The regulation that created the waiting list does not provide a deadline by which USCIS must issue a WLD. Instead, it only proclaims "[p]riority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority." 8 C.F.R. § 214.14(d)(2). Congress has set no statutory deadline for WLDs. Plaintiff has not alleged otherwise. Thus, Plaintiff has failed to state a claim for unlawful withholding of her WLD. Her second cause of action is therefore DISMISSED.

Accordingly, Defendant's Motion to Dismiss is GRANTED. Plaintiff's Complaint is DISMISSED.

IT IS SO ORDERED this 13th day of February, 2026.

*/s/ David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE